

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
99 OCT 29 PM 5:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

BRIDGET BOTHWELL,             ]
                              ]
    Plaintiff(s),             ]
                              ]
vs.                           ]   CV 98-N-2036-S
                              ]
F. WHITTEN PETERS,            ]
UNDERSECRETARY OF THE AIR     ]
FORCE, acting as SECRETARY OF ]
THE AIR FORCE, et al.,        ]
                              ]
    Defendant(s).

ENTERED
NOV 0 1 1999

## MEMORANDUM

The court has for consideration the defendants' motion to dismiss, or, alternatively, for summary judgment, filed July 13, 1999 (Doc. No. 32). The plaintiff alleges race and sex discrimination claims based on her placement in the weight management program of the National Guard and on alleged retaliatory acts for filing a complaint of discrimination. At issue is whether the plaintiff's position should be treated as a civilian or military position for Title VII purposes. For the reasons discussed below, the court shall grant the defendants' motion for summary judgment.

## I. Background.

The plaintiff, Bridget Bothwell, brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* The plaintiff is a National Guard civilian technician, specifically a military personnel specialist, and is assigned to the 225th Combat Communications Squadron of the Alabama Air National Guard (ALANG) at Gadsen, Alabama. The plaintiff is also an ALANG technician sergeant and, thus, is a member of the

Air Force. The plaintiff has been employed by the Alabama Air National Guard since 1983, and has held various positions.

On January 20, 1997, the plaintiff filed a military EO complaint alleging race, color, gender, and national origin discrimination in not being selected for the active guard/reserve (AGR) position of recruiter. On September 11, 1997, the Adjutant General issued a decision dismissing Ms. Bothwell's administrative complaint on the basis that she did not qualify for the recruiter position while in the weight management program. The Adjutant General's decision was affirmed by the National Guard Bureau on May 12, 1998. Ms. Bothwell concedes that "[t]he recruiter position she applied for was a full time military position," and thus, "the court does not have jurisdiction under Title VII to address those claims." Plaintiff's responsive submission (Doc. No. 52) at n.1. Accordingly, all of plaintiff's claims of discrimination concerning promotion to the recruiter position have been dismissed. *See* order (entered September 8, 1999; Doc. No. 56).

The plaintiff also alleges, however, that she complained about the weight management program being administered in a discriminatory manner and that she was retaliated against for making such complaints. Accordingly, the plaintiff pursues her claims in federal court on the basis of race and sex discrimination in the administration of the weight management program and for retaliation.

The defendants F. Whitten Peters, Undersecretary of the Air Force, acting as Secretary of the Air Force, the National Guard Bureau, and the Adjutant General for the State of Alabama move for dismissal of this case for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, or alternatively, for summary

2

judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1] The defendants base their motion on the grounds that there has been no waiver of sovereign immunity and the plaintiff's claims are military in nature and thus nonjusticiable.

## II. Justiciability of Plaintiff's Claims.

### A. Law.

#### 1. Introduction.

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16(a), provides that "[a]ll personnel actions affecting employees or applicants for employment . . . in military departments . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin." It is undisputed that military personnel are excluded from the provisions of Title VII. However, the authority addressing the issue of whether technician positions within the National Guard are subject to Title VII is mixed. The problem arises because these employees wear two hats, one as a civilian government employee, in which status they ordinarily would be protected by Title VII, and one as uniformed soldiers, in which status they ordinarily would not.

#### 2. Related case law.

---

[1] The plaintiff argues in her response that she intends to file a default judgment (although she has not yet done so) against the National Guard Bureau and the Adjutant General because they have not filed an answer in this lawsuit. Apparently, the answer filed on October 13, 1998, specifically references F. Whitten Peters, Undersecretary of the Air Force only, and not the other defendants. *See* answer (Doc. No. 3). However, Herbert J. Lewis, III, an assistant United States attorney, filed a notice of appearance in this case on behalf of all of the defendants on July 13, 1999 (Doc. No. 33), and has clearly filed the present motion and the reply (Doc. No. 58) on behalf of F. Whitten Peters, the National Guard Bureau, and the Adjutant General.

3

Neither the United States Supreme Court,[2] the United States Court of Appeals for the Eleventh Circuit, nor this court has specifically addressed the issue of whether a National Guard technician, who holds a hybrid military-civilian position, is protected by Title VII.

However, this court previously addressed at least some aspects of the problem in *Pounds-Cox v. United States*, No. CV-93-N-1481-S (N.D. Ala. Oct. 1, 1993) (Nelson, J.). In *Pounds-Cox*, the plaintiff, a National Guard technician, brought a claim under Title VII and Section 1983[3] alleging that she was barred from reenlisting in the Alabama National Guard, which resulted in her termination from her service-related civilian employment. In that case, this court agreed with the defendants that its action in barring the plaintiff's reenlistment in the National Guard was "peculiarly related to her military status," noting that "[w]hile Ms. Pounds-Cox may not have been a full-time military employee, while she was on duty as an enlisted member of the National Guard, she was functioning in a military capacity. She was 'under the command of state military authority, subject to court-martial, and performing her duties in military uniform.'" *Id.* at 3 (citations omitted). This court relied in part on *Stinson*

---

[2] The Supreme Court has considered a case in which a district court dismissed the due process claim of a national guard technician, "on the ground that the denial of re-enlistment was a military action not subject to review by a civilian court." *Tennessee v. Dunlap*, 426 U.S. 312, 314 (1976). However, the Supreme Court did not directly affirm the holding of the district court, instead finding that the National Guard Technician's Act of 1968, 32 U.S.C. § 709, provided no basis for the plaintiff's due process claim. Id. at 315-316. In *Feres v. United States*, 340 U.S. 135, 146, (1950), the Supreme Court held that "[t]he Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service," and in *Chappell v. Wallace*, 462 U.S. 296, 304 (1983), the Court held that "the unique disciplinary structure of the Military Establishment and Congress' activity in the field constitute 'special factors' which dictate that it would be inappropriate to provide enlisted military personnel a *Bivens*-type remedy against their superior officers." In *United States v. Stanley*, 483 U.S. 669, 681 (1987), the Supreme Court extended its holding and the protection afforded the military to preclude any *Bivens'* claim in which the injury arises from activity "incident to service."

[3] This court analyzed the plaintiff's Section 1983 claims under the framework set forth in *Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971), after acknowledging the Supreme Court's decisions in *Stanley* and *Chappell*, supra, n.2. *See Pounds-Cox v. United States*, No. CV-93-N-1481-S (N.D. Ala. Jan. 28, 1994) (Nelson, J.) (order granting motion for summary judgment).

4

*v. Hornsby*, 821 F.2d 1537, 1539 (11th Cir. 1987), which held that Title VII does not apply to persons who enlist or apply for enlistment in any of the armed forces of the United States.[4]

In *Stinson*, it was undisputed that the plaintiff was on full-time military duty with the Alabama National Guard at the time of the alleged misconduct. The Eleventh Circuit held that "members of the National Guard are generally employees of the state; but where the facts indicate that the person is on full-time military duty and other factors indicate that the person is more military than civilian, no Title VII action may be brought." *Stinson*, 821 F.2d at 1541.[5] The other factors considered by the court included the following: "(1) [the plaintiff] wore a military uniform during periods of active duty and/or training; (2) he served on full-time military duty; (3) he was paid by the federal government and not by the state of

---

[4] This court, however, was not able to determine from the record before it whether the plaintiff's overall employment was "more military than civilian." This court was never required to resolve the issue since the plaintiff's action was clearly barred as it only concerned her reenlistment in the National Guard.

[5] The *Stinson* court addressed the plaintiff's Section 1981 and 1983 claims under the *Mindes* standard and also referred to *Chappell*. The court did not mention the Supreme Court's decision in *Stanley*, decided one month prior to *Stinson*.

5

Alabama; and (4) he was subject to military discipline on a daily basis." *Stinson*, 821 F.2d at 1539.[6,7]

In *NeSmith v. Fulton*, 615 F.2d 196 (5th Cir. 1980), the Fifth Circuit considered the due process claim of a National Guard member under Section 1983 relating to his dismissal from his position as a civilian technician. The court found that the decision to terminate the plaintiff as a civilian technician "involves an internal military matter and implicates judicial concern over inappropriate intrusion into such transactions." *Id.* at 201. Accordingly, the court applied the *Mindes* two-step evaluation to determine whether the internal military decision was subject to judicial review, and decided that the plaintiff's dismissal was not reviewable by the court. At least one other circuit has relied upon the *Stinson* case in considering the claim of a plaintiff who was involuntarily released from the Active Guard Reserve program. In *Coffman v. State of Michigan*, 120 F.3d 57 (6th Cir. 1997), the plaintiff alleged discrimination based upon disability in violation of the Americans With Disabilities

---

[6] The *Stinson* court cited *Gonzalez v. Department of the Army*, 718 F.2d 926 (9th Cir. 1983), and *Taylor v. Jones*, 653 F.2d 1193, 1200 (8th Cir. 1981), in support. In *Gonzalez*, the Ninth Circuit remarked that "Congress intended a distinction between 'military departments' and 'armed forces,' the former consisting of civilian employees, the latter of uniformed military personnel. We conclude, therefore, that the term 'military departments' in section 717(a) of Title VII, when read in the context of the statutory definitions to which it refers, can be fairly understood to include only civilian employees of the Army, Navy, and Air Force and not both civilian employees and enlisted personnel as appellant argues." *Gonzalez*, 718 F.2d at 928. (citations omitted). In *Taylor,* the Eighth Circuit found that Title VII did not protect the plaintiff when she was in her position as a recruiter with the Arkansas Army National Guard because "she was on full-time military duty with the Arkansas National Guard; she was neither a federal [n]or a state employee. She was under the command of state military authority, subject to court-martial, and performed her duties in military uniform." However, the court noted that Title VII did protect the plaintiff in her later position in the Guard as a mail room clerk because she was a state employee.

[7] The *Stinson* court recognized the holding in *Calhoun v. Doster*, 324 F.Supp. 736, 740 (M.D. Ala. 1971), in which the court found that the military authority of the National Guard officers was "so inextricably intertwined with their civilian authority over [the plaintiff]" as to actually allow a claim under 42 U.S.C. § 1983, rather than prohibit such a claim. This court rejects the holding in *Calhoun*. This case was decided by a district court almost 30 years ago without the benefit of the Supreme Court and circuit court decisions which have addressed the issue at hand in great detail. Furthermore, the *Calhoun* case had nothing to do with the type of discrimination that Title VII was designed to protect but rather dealt with illegal solicitations of political contributions.

Act, Title V of the Rehabilitation Act, and the Michigan Handicapper's Civil Right's Act. In determining the applicability of these statutes to the plaintiff's claims, the Sixth Circuit noted that "uniformed members of the armed forces have no remedy under Title VII of the Civil Rights Act of 1964." *Coffman*, 120 F.3d at 59 (citing *Stinson*, 821 F.2d 1537; *Roper v. Department of the Army*, 832 F.2d 247 (2d Cir. 1987);[8] and *Johnson v. Alexander*, 572 F.2d 1219 (8th Cir. 1978)).[9]

Finally, in *Wright v. Park*, 5 F.3d 586, 589 (1st Cir. 1993), the First Circuit considered a National Guard technician's civil rights claims brought under 42 U.S.C. §§ 1983, 1985, and held that

> while a technicians' job is a composite, containing both civil and military pieces, the job's dual aspects are inseparable; they are like Chang and Eng, joined at the chest. And from the fact that the technician's several roles are inextricably intertwined, it follows that the adverse employment action against which appellant inveighs necessarily implicates his military as well as his civilian status.

Accordingly, the court dismissed the plaintiff's claims.

---

[8] In *Roper*, the Second Circuit held that Title VII does not apply to uniformed members of the armed forces, including the United States Army Reserve. The court noted that:

> Title VII was designed to protect from discrimination "employees or applicants for employment * * * in military departments * * *." 42 U.S.C. § 2000(e)-16(a). A comparison of the language Congress uses when referring to civilian employees of the various military departments, as opposed to uniformed military personnel, indicates that Congress intended the term "military department" to include only civilian employees, and not enlisted personnel. Further, nothing in the legislative history indicates that Congress sought to vest the Equal Employment Opportunity Commission (EEOC), responsible for Title VII enforcement, with the power to review the hiring and employment practices of the Armed Forces.

*Roper*, 832 F.2d at 248. (citations omitted).

[9] In *Johnson*, the court held that while "[t]here is no question that Congress intended for § 717(a) [of Title VII] to afford protection against discrimination to civilian employees and applicants for civilian employment in the Departments of the Army, Navy and Air Force," the statute does not provide protection to the uniformed personnel of the armed forces, including persons who enlist or apply for enlistment in the armed forces. *Johnson*, 572 F.2d at 1224.

### 3. Case law on point.

Up to this point, the court has discussed cases which have not been directly on point with the facts in the instant case. Just recently, however, a court in this district rendered a decision concerning a National Guard technician's claims of discrimination, retaliation, and harassment under Title VII and Sections 1981 and 1983. *See Woody v. West*, No. CV 97-B-1291-S (N.D. Ala. Sept. 30, 1999). The *Woody* court noted that the plaintiff had brought previous claims of discrimination and/or retaliation under those same statutes, and therefore, based on the doctrine of collateral estoppel, the plaintiff was barred from raising those issues again. Accordingly, the court found that "[b]ased on the judgments rendered in *Woody I*[10] and *Woody II*,[11] the court finds that the only proper defendant in this case is . . . the Secretary of the Army" and that "Woody is a federal civilian employee and his only proper cause of action is under Title VII." *Id.* at 12. Based on those grounds, the court granted summary judgment to the Adjutant General and the plaintiff's supervisor, Jairus D. Holt. The court also granted summary judgment to the National Guard Bureau because it

---

[10] As summarized by Judge Blackburn,

> the *Woody I* court held, *inter alia*, that Woody, as National Guard technician was as [sic] a federal civilian employee, and therefore his sole remedy was Title VII. Consequently, the court dismissed the section 1981 and 1983 claims. Further, the court held that as a federal civilian employee of the Army, Woody could only bring suit against the Army. Accordingly, all other defendants were dismissed from the case. The court then dismissed the remaining Title VII claim based on plaintiff's failure to exhaust administrative remedies.

*Woody*, at 3-4. The Eleventh Circuit affirmed, but it was noted that the plaintiff had not contested the district court's findings that Title VII was his exclusive remedy and that the Army was the only proper defendant. *Id.* at 4.

[11] In *Woody II*, the district court "dismissed the section 1981 and 1983 claims as stale" and again found that on the Title VII claim, the only proper defendant was the Secretary of the Army. *Woody*, at 5-6. The Title VII claim was later dismissed on summary judgment for failure to exhaust administrative remedies, and the Eleventh Circuit dismissed the appeal for failure to prosecute. *Id.* at 6.

8

was as an agency of the Secretary of the Army and thus not a proper defendant under Title VII.

Even though the court found the doctrine of collateral estoppel to apply, it proceeded to analyze the plaintiff's claims, determining that, in the alternative, "all claims against all defendants are due to be dismissed as nonjusticiable military matters not reviewable by this court." *Id.* at 13. The *Woody* court first found that, based on *NeSmith* and *Wright*, "a technician enlisted in the National Guard under the auspices of 32 U.S.C. § 709 must be considered military for purposes of discrimination and civil rights actions, even if the challenged conduct was related to his/her civilian technician position." *Id.*[12] The court then went on to determine whether the challenged conduct was military in nature, rendering the claims nonjusticiable. Although the parties in that case both used the *Mindes* analysis in addressing this issue, the *Woody* court found that "the standard set forth in *Feres* and its progeny[13] is the correct rule to apply when determining whether an activity in the uniformed services is military in nature, rendering it nonjusticiable,"[14] and that the Eleventh Circuit had recognized the applicability of *Stanley* in *Bivens*-type actions in *Kitowski v. United States*,

---

[12] This court admits that it is a bit perplexed by the fact that the *Woody* court summarily determined that the plaintiff was a military employee after stating on the previous page that, based on *Woody I* and *Woody II*, "Woody is a federal civilian employee and his only proper cause of action is under Title VII." *Woody*, at 12. It is noteworthy that the Eleventh Circuit did not address this specific issue as the plaintiff did not appeal it in either of his previous cases.

[13] That progeny would include *Chappell* and *Stanley*, discussed *supra*, at n.2.

[14] The *Woody* court cited *Neal v. Alabama National Guard*, No. 96-A-1495-S, 1997 WL 114910 (M.D. Ala. Mar. 13, 1997), in support, which held that the plaintiff, a National Guard technician, was a member of the military and that the *Feres* standard applied, rather than the *Mindes* factors, in determining the justiciability of the plaintiff's Section 1981, 1983, and 1985 claims. Accordingly, the court applied the three factor test set forth by the Eleventh Circuit in *Kitowski, infra*, in order to determine if the actions leading to the injury occurred "incident to service." *Id.* at *4. The court noted that it confined its analysis to an application of the *Feres* doctrine, as the defendants had only discussed their arguments in the context of *Feres*.

931 F.2d 1526 (11th Cir. 1991).[15] Ultimately, then, the *Woody* court applied *Kitowski* and the factors set forth therein to determine the justiciability of the plaintiff's claims under Title VII and Sections 1981 and 1983, which were all related to a promotion to a military position. As to plaintiff's harassment claims, the court simply found that the challenged activity was incident to service as the plaintiff was on-duty, in military facilities, and undertaking military activities, even though the alleged actions occurred in the maintenance shop when the plaintiff was not on active duty. Thus, the court found that all of the plaintiff's claims were nonjusticiable.

This court finds that it is not necessary to apply the *Feres/Chappell/Stanley* analysis (and therefore the *Kitowski* factors) to this case because although these cases are instructive in their handling of cases involving members of the military, they were not concerned with the unique type of position at issue here, that of a National Guard technician who holds a hybrid military-civilian position. Furthermore, these cases did not involve Title VII but rather other statutes, such as the FTCA, and in some instances sought a *Bivens*-type remedy. Although neither *Pounds-Cox* nor *Stinson* are directly on point with the facts at hand either, this court finds that both *Stinson* and *Pounds-Cox* continue to provide the proper guidance in analyzing National Guard technician claims under Title VII.[16]

---

[15] The *Kitowski* case involved an action brought under the Federal Tort Claims Act by the mother of a Navy enlisted man who died during a training exercise. The Eleventh Circuit affirmed the district court's application of the *Feres* doctrine to that case.

[16] The plaintiff argues that the case of *Thornton v. Coffey*, 618 F.2d 686 (10th Cir. 1980), specifically addressed the issue at hand and is therefore applicable to this case. In *Thornton*, the appellate court reviewed the trial court's judgment in favor of a guardsman, who brought a civil rights action under Title VII against the National Guard for discriminating against him with regard to a full-time civilian position and for retaliating against him in the military arena for filing a complaint. It appears from the decision that the district court automatically applied Title VII to the plaintiff's claims without addressing the hybrid aspect of the technician position. However,

The court also notes that in *Mier v. Owens*, 57 F.3d 747 (9th Cir. 1995), the Ninth Circuit specifically addressed the question of whether a National Guard technician can maintain a Title VII employment discrimination action.[17] The *Mier* court first noted that the National Guard Technicians Act, 32 U.S.C. § 709, contains no language about the applicability of Title VII. The court also referenced the language in Title VII providing coverage to "'employees . . . in military departments,'" but noted that this language only applies to civilian employees in the military and not uniformed personnel. *Mier*, 57 F.3d at 749. (citation omitted). The court found that the language in these statutes only indicates that a Guard technician holds a "dual-status" job,[18] and ultimately concluded that "Title VII coverage of civilians employed by the military encompasses actions brought by Guard technicians except when the challenged conduct is integrally related to the military's unique structure." *Id.* at 750. The court further noted that

> in some circumstances, personnel actions are not integrally related to the military's structure. Concerns regarding military hierarchy and discipline may not be at issue in suits alleging discriminatory conduct on the part of peers or subordinates. In addition, actions affecting civilian employees may not involve matters considered military in nature.

---

the appellate court noted that at least as to the retaliation against the plaintiff which affected his military promotion "we have grave doubts that the power of the court extends to the ordering of military promotions." *Id.* at 691-92. Therefore, the appellate court reversed the district court's award of injunctive and monetary relief relating to the plaintiff's military promotion. This court rejects the holding in *Thornton* in favor of more recent decisions, insofar as *Thornton* applied Title VII to plaintiff's discrimination claims without analyzing the unique hybrid position that the plaintiff held as a National Guard technician.

[17] The plaintiff in *Mier* was a civil service technician in the Arizona Army National Guard, serving in a "civilian capacity as a full time supply management officer and in a military capacity as a commissioned officer not on active duty." *Mier*, 57 F.3d at 748.

[18] The court also noted that, although Title VII is not included in the list of several employment statutes deemed inapplicable to Guard technicians under the NGTA, "applicability of Title VII is clearly not provided in 'unmistakable terms.'" *Mier*, 57 F.3d at 749.

11

*Id.* The court in *Mier* found that the plaintiff's claims of failure to promote, suspension from civilian employment, and retaliation in the form of an investigation were all integrally related to the military's structure, and thus, Title VII did not encompass those claims.[19] Having laid the backdrop of the various cases dealing with the types of issues presented in this case,[20] the court will now turn to an analysis of the plaintiff's claims.

### B. Plaintiff's claims.

The plaintiff's claims center on her placement in the weight management program which she alleges is being administered in a discriminatory manner, and on an alleged retaliatory incident in which her commanding officer yelled at her for filing a military EO

---

[19] The Ninth Circuit has continued to follow the *Mier* analysis, dismissing a civilian technician's promotion claims under Title VII because "decisions relating to the 'promotion [or] suspension' of civilian employees of the National Guard, including technicians, are 'integrally related to the military's unique structure.'" *Gregory v. Widnall*, 153 F.3d 1071, 1074 (9th Cir. 1998) (quoting *Mier*, 57 F.3d at 751). The defendants argue that "the *Mier* decision is seriously flawed because if fails to examine or appreciate what the Technician hybrid really is; and, more importantly, it overlooks completely the rules regarding sovereign immunity and its waiver." Defendants' initial submission (Doc. No. 34) at n. 1. It is clear that the defendants are opposed to *Mier* because it "would conceptually open the door for Technicians to sue under Title VII in some instances," as opposed to cases like *Wright* which appear to not only close the door on technicians' suits but nail it shut. However, the court believes that *Mier* should not be lightly tossed aside. First, the court recognizes that the National Guard regulation submitted by the plaintiff governs civilian discrimination complaint processing and adjudication and specifically states that the regulation "applies to National Guard technician personnel . . . and to all personnel who supervise, manage, or regulate the National Guard technician workforce." Motion to submit additional legal authority (Doc. No. 61) tab 1 at 1. The regulation goes on to "implement[] Title VII of the Civil Rights Act of 1964, as amended," allowing a complainant to "file a civil action in an appropriate United States District Court." *Id.* at 4, 1-1(b) and 32, 8-2(a). There is also, however, a National Guard military discrimination complaint system, which does not allow for the filing of a lawsuit and applies to Air National Guard military personnel. *Id.*, tab 2 at 1, 13-14, 25. Thus, there is still a question of whether the person is more military than civilian and whether the nature of the challenged conduct is military rather than civilian. Second, as *Mier* is the only case available that appears to be directly on point with the facts of this case and does not seem to be at odds with *Pounds-Cox* and *Stinson*, the court declines to reject *Mier*. In any event, the defendants adamantly argue that they can satisfy the *Mier* standard anyway, and the court agrees.

[20] This court certainly agrees with the *Woody* court that "[d]ue to the unique dual-status conferred upon National Guard technicians by 32 U.S.C. § 709, this is a murky area of law riddled with judicial decisions that vary as to reason and result." *Woody*, at 10.

12

complaint.[21] The court notes that both of the plaintiff's claims are related to her nonselection for an active duty military position.

The plaintiff was informed that the reason she was not chosen for the recruiter position was because she was in the military weight management program and did not meet applicable weight standards. Defendants' initial submission (Doc. No. 34) Declaration of Major Harris, at 3 and tab 3. It is undisputed that the job announcement indicated that applicants must meet weight requirements to be qualified for the recruiter position. *Id.,* Declaration of Colonel McCutchin, at 3-4 and tab 1. Moreover, the weight management program applies to military personnel of the Air National Guard and is governed by National Guard regulation NGR (AF) 35-11(C1). *Id.* at tab 2. The preamble of the regulation refers to "all Air National Guard *members,*" which term apparently refers to those in the military, not civilian employees. *Id.; see* defendants' reply (Doc. No. 58) at 6. Furthermore, the regulation governing the weight management program states its purpose:

> Department of Defense (DoD) Directive 1308.1 requires each Military Service to provide a weight control and fitness program. The Air National Guard Weight Management Program is tailored to meet DoD policies and objectives while meeting the specific needs for the Air National Guard. Control of body fat and physical fitness is linked to self-image and self-esteem and promotes an overall healthy life-style for all Air National Guard members while improving military appearance and performance. Air National Guard members are responsible for achieving and maintaining body fat and physical fitness standards as defined in this regulation.

---

[21] The plaintiff asserts in her brief that Colonel McCarter "continues to retaliate against [her] to this day by harassing her because of her EEO Compliant, labeling her a troublemaker, and giving her unfavorable job assignments. He has even taken her civilian office away from her in retaliation for her complaints." Opponent's responsive submission (Doc. No. 52) at 10. The defendants rightly point out that the "[p]laintiff never raised the allegation about being removed from her office in her complaint, nor did she seek to amend her complaint to include the alleged 'string of events.'" Defendants' reply (Doc. No. 58) at 8.

*Id.* at tab 2, ¶ 1-1. The regulation makes clear that the administration and function of the weight management program is strictly a military concern. To be sure, the plaintiff has never alleged that her placement in the weight management program had any adverse effect on her civilian technician position.

As to the retaliation claim, it is undisputed that the complaints filed by the plaintiff, which she argues caused the retaliation, were military EO complaints and not civilian complaints. The plaintiff's complaints were processed under military National Guard regulations and the review process ended with the National Guard Bureau providing for no right of judicial review. Furthermore, the alleged "yelling" apparently occurred while the plaintiff was on active duty, as she notes in her affidavit that she "was extremely fearful of going back to active duty the next day" after the yelling incident. Plaintiff's evidence (Doc. No. 54) tab 1 at ¶ 36. Even the plaintiff admits, as to both of her claims, that what is at stake are military matters. She asserted in her statement of facts that:

> Mr. Phillips [the union steward] stated that all *military matters* should be dealt with on military time, or on active duty, and that any correspondence about the weight management program should be mailed to the plaintiff and that neither Colonel McCarter nor Cynthia Bryant should verbally question the plaintiff about the program or her complaints of discrimination.

Plaintiff's response to statement of facts (Doc. No. 51) ¶ 71 (emphasis added). Clearly, the correspondence and questioning related to the weight management program and the plaintiff's complaints of discrimination were considered military matters by Mr. Phillips and apparently by the plaintiff herself.

The court finds that the circumstances surrounding the plaintiff's claims indicate that she was more military than civilian when she was complaining about the weight management

14

program and when the alleged retaliation occurred. It is clear that the weight management program had nothing to do with her civilian job but was related to her application for a military position. Further, the alleged retaliation which occurred was undertaken by a commanding officer, while the plaintiff was on active duty, and in response to military EO complaints filed by her.

Accordingly, the court finds that the subject matter and incidents forming the basis of the plaintiff's claims are integrally related to the plaintiff's application for a full-time military recruiter position and consequently her status as a military member of the Alabama National Guard. Furthermore, the court agrees with the defendant that allowing the plaintiff to bring her retaliation claim in federal court would essentially permit the plaintiff to "bootstrap her way into federal Court with respect to a matter that the Court would not otherwise have jurisdiction of and would, in effect, render the statutory exclusion of military Title VII complaints under these circumstances meaningless." Defendants' reply (Doc. No. 58) at 10. For the reasons outlined above, defendants' motion for summary judgment is hereby **GRANTED**.

Done, this **29th** of October, 1999.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE